FILED

2007 OCT 15 PM 12: 34

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**07 MJ 24 46**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | MAGISTRATE CASE NO.: |
| Plaintiff, | ) | Amended COMPLAINT FOR VIOLATION OF |
| v. | ) | Title 18, U.S.C., Section 111(a)(1) – Assault on a Federal Officer |
| Israel Amezquita-Luna; | ) | Title 8, U.S.C., Section 1326 – Deported Alien Found in the United States |
| Defendant | ) | |

The undersigned complainant, being duly sworn, states:

### Count 1

On October 11, 2007, within the Southern District of California, defendant Israel Amezquita-Luna, did knowingly and intentionally, willfully and forcibly assault, resist, oppose, impede or interfere with a person named in 18 U.S.C. Section 1114, namely Department of Homeland Security, United States Border Patrol Agent Ricardo Booth, in that Defendant, in an effort to resist arrest, attempted to punch Booth, fled from Booth, and attempted to strike Booth with a large rock while Agent Booth was engaged in the performance of his official duties, in violation of Title 18, United States Code, Section 111(a)(1).

### Count 2

On or about October 11, 2007, within the Southern District of California, defendant Israel Amezquita-Luna, an alien, who previously had been excluded, deported and removed from the United States to Mexico, was found in the United States, without the Attorney General or his designated successor, the Secretary of the

Department of Homeland Security (Title 6, United States Code, Sections 202(3) and (4), a 557), having expressly consented to the defendant's reapplication for admission into the United States; in violation of Title 8, U.S.C., Section 1326.

And the complainant states that this complaint is based on the attached Probable Cause Statement incorporated herein by reference.

_____
WILLIAM C. McNAMARA, Special Agent
Federal Bureau of Investigation

SWORN TO ME AND SUBSCRIBED IN MY PRESENCE THIS 15th DAY OF October 2007.

_____
William McCurine
United States Magistrate Judge

CONTINUATION OF COMPLAINT:

2

UNITED STATES v. ISRAEL AMEZQUITA-LUNA

<u>PROBABLE CAUSE STATEMENT</u>

I, Special Agent William C. McNamara, declare under penalty of perjury, the following is true and correct:

These facts are based on my personal participation in this investigation, as well as written and oral statements received from other law enforcement officers. I submit the facts contained in this statement demonstrate probable cause exists to believe that the defendant named in the attached complaint committed the crimes charged in the complaint. I have not included each and every fact known to me about the defendant or this investigation. I have included only those facts which I believe are necessary to establish probable cause to believe that the defendant committed the crimes alleged in the complaint.

This affiant states that Manuel Eugenio Ortega, Edwin Moye-Villanueva, Jesus Martinez-Ramirez, Minerva Salazar-Antonio, and Monica Perez-Ramirez are citizens of a country other than the United States; that said aliens have admitted that they are deportable; that their testimony is material; that it is impracticable to secure their attendance at the trial by subpoena; and they are material witnesses in relation to this criminal charge and should be held or admitted to bail pursuant to Title 18, United States Code, Section 3144.

On October 11, 2007, United States Border Patrol Agent Ricardo Booth responded to a seismic sensor east of the SR-94 Checkpoint and south of Highway 94 in the vicinity of Barrett Smith Road in an area referred to as Upper Barrett Smith. In this area, there is a ridge to the south side of Highway 94 and a steep ravine to the north side

of Highway 94. From the seismic sensor, Agent Booth and his partner, Agent Rockford Ross, believed there would be two possible routes for the individuals to travel northbound across Highway 94. The Agents separated from one another with Agent Booth occupying one of the suspected routes and Agent Ross occupying the second suspected route. Both Agents awaited for the individuals to travel northbound.

In the approaching darkness, Agent Booth viewed multiple individuals walking across the ridge line to the south. Agent Booth hid in the bushes and waited for the individuals to come down toward him. Agent Booth was able to hear the individuals talking to one another. Agent Booth heard instructions being given that should anyone be stopped by the Border Patrol, they should just ignore the agents and keep running. The individuals were instructed not to stop.

Agent Booth observed the group split into two smaller groups. Agent Booth found himself essentially between the two groups as they split and approached the highway. To Agent Booth's right appeared two males. Agent Booth turned on his flashlight, identified himself as a Border Patrol Agent in both English and Spanish, and instructed the two men to stop. One male turned back south and disappeared into the brush. The second male, defendant Israel Amezquita Luna, kept going northbound, across Highway 94. Agent Booth traveled across the highway behind the defendant and followed him down into a deep ravine with very rugged terrain.

Both Agent Booth and the defendant stumbled as they descended down the steep embankment into the ravine. Agent Booth continued to give commands for the defendant to stop in both English and Spanish.

As Agent Booth got closer to the defendant, the defendant fell, rolled over, grabbed a handful of dirt, and threw it at Agent Booth. The defendant got up and continued to run into the ravine. Agent Booth continued to follow the defendant and kept ordering the defendant to stop. The defendant fell once again, got up and ran from Agent Booth, and suddenly stopped. The defendant turned toward Agent Booth and cocked his left hand back as if he were going to throw a punch. Agent Booth, who was still running downhill, was unable to stop quickly and ran into the defendant, striking him in the upper torso and head with his flashlight. Agent Booth informed the defendant he was under arrest. Agent Booth attempted to handcuff the defendant but the defendant pulled away from Agent Booth and continued to flee. During the ensuing chase, the defendant fell multiple times because of the rough terrain. In each instance, Agent Booth attempted to handcuff the defendant but was unsuccessful because the defendant kept resisting.

Agent Booth continued to chase the defendant until the point where Agent Booth was able to grab the defendant from behind. Agent Booth once again attempted to handcuff the defendant but was unsuccessful. The defendant picked up a rock with his left hand and turned toward Agent Booth while cocking his left hand back. Agent Booth feared for his safety that the defendant might strike him with the rock. Agent Booth ducked, drew his issued weapon, and fired one round at the defendant, hitting him. Agent Booth did not believe he hit the defendant at that time. The defendant turned and kept moving away from Agent Booth.

The defendant stopped after a short distance, turned toward Agent Booth and said, "Go ahead, kill me." Agent Booth responded by

stating, "Sit down, it's over." The defendant kept resisting and asked Agent Booth, "Why did you shoot me?" The defendant began walking toward Agent Booth and sat down. Agent Booth handcuffed the defendant's right hand but was unable to cuff his left hand. Agent Booth put his knee on to the defendant's back and put the defendant down on the ground. The defendant held a rock in his left hand and attempted to roll over and hit Agent Booth with it. Agent Booth kicked the rock from the defendant's hand and told the defendant to calm down. The defendant kept squaring off to Agent Booth, resisting Agent Booth's attempt to handcuff him. By this time, a helicopter was overhead and additional Border Patrol Agents arrived to provide assistance. At that time, the defendant was finally handcuffed and taken for treatment for a gunshot wound to his left hip and a cut over his left eye.

Routine record checks of the defendant revealed a criminal and immigration history. The defendant's record was determined by a comparison of his criminal record and the defendant's current fingerprint card. Official immigration records of the Department of Homeland Security revealed that the defendant was previously deported to Mexico on March 27, 2006, through the Port of Entry at Nogales, Arizona. These same records show that the defendant has not applied for permission from the Attorney General of the United States or his designated successor, the Secretary of the Department of Homeland Security, to return to the United States after being removed.

The defendant was advised of his Miranda Rights in the English language. The defendant stated that he illegally entered the United States by walking across the international border near Tecate, California. The defendant stated that he does not have any

immigration documents that would allow him to legally enter or remain in the United States.

The following morning, Border Patrol Agents took five illegal aliens into custody in the vicinity of Upper Barrett Smith where the assault took place. Subsequent investigation revealed the five were part of the group with the defendant when the defendant was contacted by Agent Booth. The five were subsequently interviewed and provided the following statements.

The following persons: Manuel Eugenio Ortega, Edwin Moye-Villanueva, Jesus Martinez-Ramirez, Minerva Salazar-Antonio, and Monica Perez-Ramirez, each stated they are citizens of Mexico and do not have any immigration documents that would allow them to be present or remain in the United States legally.

Manuel Eugenio Ortega stated he heard one voice say "Stop" and he heard a gunshot.

Edwin Moye-Villanueva stated he heard someone yell "Stop." Moye-Villanueva stated there were additional words spoken in English that he did not understand. He believed the "Stop" command was from a Border Patrol Agent because it was in English. Approximately 30 seconds later, Moye-Villanueva stated he heard a single gunshot.

Jesus Martinez-Ramirez stated he heard someone yell "Stop" in English and then additional voices that he could not understand. Additionally, he believed he heard some sort scuffling or sliding in the brush. Martinez-Ramirez heard a single gunshot approximately 20-30 seconds after the "Stop" command.

Minerva Salazar-Antonio stated she heard "Stop" possibly two times, both in English, and then heard running noises in the brush. Salazar-Antonio heard other English conversation that she did not

understand.  She stated she possibly heard the "Stop" command prior to hearing a single gunshot.

Monica Perez-Ramirez stated she heard one single gunshot and then saw a helicopter a short time later.  Perez-Ramirez heard no conversation.

I believe there is probable cause to believe that on October 11, 2007, within the Southern District of California, defendant Israel Amezquita-Luna did knowingly and intentionally, willfully and forcibly assault, resist, oppose, impede, or interfere with a person named in 18 U.S.C. Section 1114, namely Department of Homeland Security, United States Border Patrol, Border Patrol Agent Ricardo Booth, in that defendant, in an attempt to resist arrest, threatened to punch Booth, fled from Booth, and attempted to strike Booth with a large rock while Agent Booth was engaged in the performance of his official duties, in violation of Title 18, United States Code, Section 111(a)(1).

I also believe there is probable cause to believe that on or about October 11, 2007, the defendant Israel Amezquita-Luna illegally entered the United States by walking across the international border near Tecate, California, in violation of Title 8, U.S.C., Section 1326.

Finally, the affiant states that Manuel Eugenio Ortega, Edwin Moye-Villanueva, Jesus Martinez-Ramirez, Minerva Salazar-Antonio, and Monica Perez-Ramirez are citizens of a country other than the United States; that said aliens have admitted that they are deportable; that their testimony is material; that it is impracticable to secure their attendance at the trial by subpoena; and they are material witnesses in relation to this criminal charge

and should be held or admitted to bail pursuant to Title 18, United
States Code, Section 3144.


          Executed on 10/15/2007 at  SAN DIEGO, CA                    .


                              _____
                              William C. McNamara, Special Agent
                              Federal Bureau of Investigation


9